UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GALVESTER HOWARD JOHNSON,

       Petitioner,                        Hon. Paul L. Maloney

v.                                          Case No. 1:06-CV-778

CINDI CURTIN,

       Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Johnson's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Johnson's petition be **denied**.


## BACKGROUND

Following a jury trial, Petitioner was found guilty of two counts of armed robbery, assault with a dangerous weapon, possession of a firearm by a felon, possession of a firearm during the commission of a felony, and obstructing a police officer. (Trial Transcript, April 2, 2004, 451-52). On the conviction for possession of a firearm during the commission of a felony, Plaintiff was sentenced to serve two years in prison. (Sentencing Transcript, April 16, 2004, 11-12). With respect to the various other convictions, Petitioner received sentences ranging from 10-15 years to 35-70

1

years. (Tr. 12-13). The two year sentence for possession of a firearm during the commission of a felony was consecutive to the other sentences, all of which were to run concurrently. (Tr. 11-13). Petitioner appealed his conviction to the Michigan Court of Appeals, asserting the following claims:

> I. Defendant's convictions should be reversed because the trial court abused its discretion in permitting Defendant to be restrained during trial.
>
> II. Defendant's convictions should be reversed because the trial court abused its discretion in denying Defendant's request for new counsel.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Johnson,* No. 255450, Opinion (Mich. Ct. App., Sep. 13, 2005). Asserting the same two claims, Petitioner appealed this determination in the Michigan Supreme Court. The court denied Petitioner's request for leave to appeal, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Johnson,* No. 129835, Order (Mich., Jan. 30, 2006). On October 30, 2006, Petitioner initiated the present action, asserting the two claims identified above.

**STANDARD OF REVIEW**

Johnson's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

> Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

In certain circumstances, however, the deferential standard articulated above does not apply. First, if the state court resolves a particular claim but fails to articulate its analysis, the Court must apply "modified AEDPA deference." *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007). Under this standard, "the court conducts a 'careful' and 'independent' review of the record

4

and applicable law, but cannot reverse 'unless the state court's decision is contrary to or an unreasonable application of federal law.'" *Id.* at 570. However, where the state court has altogether failed to review a particular claim, such is reviewed de novo. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). In such circumstances, the court conducts a *de novo* review. *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

**I.        Petitioner's Placement in Restraints**

At the outset of trial, before jury selection occurred, the prosecutor moved the court "to have the defendant physically secured during the trial for safety of all parties concerned." (Trial Transcript, March 31, 2004, 3). In light of the evidence presented in support thereof, the court granted the prosecutor's motion, provided that "appropriate obstructions" were placed "in front of the counsel table" to prevent the jurors from observing Petitioner's restraints. (Tr. 23). Petitioner asserts that being shackled during his trial violated his constitutional rights. Respondent asserts that Petitioner cannot prevail on this claim because the right of a criminal defendant not to be shackled during his criminal trial was not clearly established at the time of Petitioner's trial.

Almost fourteen months after Petitioner's trial, the Supreme Court decided *Deck v. Missouri*, 544 U.S. 622 (2005). Carman Deck was tried for murder and robbery. *Id.* at 624. During

5

his trial, Deck was restrained by leg braces that were apparently not visible to the jury. *Id.* Deck was convicted and sentenced to death. *Id.* at 625. On appeal, Deck's conviction was affirmed, but his sentence set aside. A new sentencing proceeding was subsequently conducted, during which Deck "was shackled with leg irons, handcuffs, and a belly chain." Deck's objections to these restraints were rejected by the trial court. On appeal, Deck argued that his shackling violated his rights under both state and federal law. Deck's appeals were unsuccessful, after which time he sought review by the United States Supreme Court. *Id.* The Court granted certiorari to "consider whether shackling a convicted offender during the penalty phase of a capital case violates the Federal Constitution." *Id.* at 624-25.

Before addressing the particular issue raised by Deck's appeal, the Court first considered "whether, as a general matter, the Constitution permits a State to use visible shackles routinely in the guilt phase of a criminal trial." *Id.* at 626. The Court concluded that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Id.* at 626-29. The Court found that this result was compelled by its own precedent, as well as legal precedent predating the creation of the United States Constitution. *Id.* Respondent asserts that prior to the *Deck* decision, the right of a criminal defendant not to be restrained at trial was not clearly established. The Sixth Circuit, however, has concluded otherwise.

In *Lakin v. Stine*, 431 F.3d 959 (6th Cir. 2005), decided after *Deck*, Lakin appealed to the Sixth Circuit the decision by a district judge denying his petition for writ of habeas corpus. In 1990, Lakin was convicted of prison escape, kidnapping, assault on a prison employee, and unlawfully driving away an automobile. *Id.* at 960-61. Plaintiff unsuccessfully appealed his

6

convictions in state court, after which Lakin filed a petition for writ of habeas corpus in federal court. *Id.* at 961. The district court twice granted Lakin relief, but on each occasion such was reversed and the matter remanded to the district court for further consideration. Following the second remand, the district court addressed Lakin's claim that his "due process rights were violated when he was forced to wear leg irons during his trial." The district court found that "Lakin's due process rights were violated because the trial court failed to conduct any inquiry into or make any findings regarding the necessity of the shackles." The court further determined, however, that this error was harmless given the "overwhelming" evidence of Lakin's guilt. Accordingly, the district court denied Lakin's petition for habeas relief. Lakin appealed this determination to the Sixth Circuit. *Id.*

The Sixth Circuit recognized that Lakin was not entitled to relief unless he demonstrated that the state court's resolution of his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* (quoting 28 U.S.C. § 2254(d)). The court observed that to determine what constitutes "clearly established law," it must look "to the law as established by the Supreme Court's holdings and not its dicta." *Id.* The court further observed, however, that "an explicit statement by the Supreme Court is unnecessary," as "the legal principles and standards flowing from [Supreme Court] precedent also qualify as clearly established law." *Id.* at 961-62.

The *Lakin* court then undertook an examination of the Supreme Court's ruling in *Deck* and concluded that pursuant to such the right of a criminal defendant not to be restrained at trial was clearly established as of Lakin's 1990 trial. *Id.* at 962-63. Specifically, the court observed that

> Although *Deck* was only recently decided, the Supreme Court made clear that the guilt phase rule was clearly established law prior to the date of the *Deck* decision. *Deck* addressed whether the guilt phase rule is applicable in the capital sentencing context. Furthermore, the Supreme Court stated on several occasions that the law has long forbidden the use of the shackles at trial. *Id.* at 2010 ("The answer is clear: The law has long forbidden routine use of visible shackles during the guilt phase. . .This rule has deep roots in the common law."); *see also id.* at 2012 ("[I]t is clear that this Court's prior statements [i.e., *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) and *Holbrook v. Flynn,* 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986)] gave voice to a principle deeply imbedded in the law."). We therefore conclude that the principle that shackling a defendant at trial without an individualized determination as to its necessity violates the due process clause was clearly established long before *Deck* was decided.

*Lakin*, 431 F.3d at 963.

In sum, the Sixth Circuit has determined that the right on which Petitioner relies in support of this particular claim was clearly established prior to his trial. The question, therefore, becomes whether the decision to restrain Petitioner during his trial violated his Constitutional rights.

In support of her motion to have Petitioner restrained during trial, the prosecutor presented the testimony of Kalamazoo County Deputy Sheriff Steven DeHaan. Deputy DeHann testified that Petitioner had physically assaulted jail staff, threatened jail staff with physical violence, thrown urine at staff members, covered his cell with feces, "jammed the lock" on his cell door with a bar of soap so as to prevent officers from being able to unlock his cell, and defied officers during cell searches. (Trial Transcript, March 31, 2004, 4-12). DeHaan described an incident in which Petitioner jammed a piece of a paperclip into his handcuffs, presumably in an attempt to unlock his handcuffs. (Tr. 11). DeHaan testified that Petitioner "yells and screams and beats on the door" of his cell and agitates the other prisoners. (Tr. 12). DeHaan testified that Petitioner has "a bad behavioral problem" and that "when things don't go his way, he acts out." (Tr. 13). DeHaan

8

testified that the previous day, when Petitioner met with his attorney, guards had to restrain Petitioner because they were concerned that Petitioner "was going to harm his attorney." (Tr. 14). DeHaan testified that Petitioner told him that "he don't want to go to trial, period." (Tr. 15). DeHaan characterized Petitioner as an "escape risk" because "he will try to do anything in his power to not go through with this trial [and] to disrupt the court." (Tr. 15).

The prosecutor also submitted a report prepared by Lieutenant Gail Sampsell concerning Petitioner's behavior from October 2003 through March 2004. (Tr. 6, 19). This report described numerous incidents involving Petitioner, including the following: (1) multiple escape attempts; (2) becoming "enraged and profane" when confronted by officers after participating in "a urine throwing incident;" (3) several incidents of self-mutilation; (4) several incidents in which he threatened to kill staff members; (5) engaging in verbal tirades toward staff; (6) counseling another inmate to "cut himself up" with a razor; (7) throwing feces; (8) making weapons from razors and pieces of wire; and (9) telling an officer to perform a sex act on him. (Tr. 19-22). In light of this evidence, the court granted the prosecutor's motion, stating the following:

> I've observed him here in the courtroom. He is obviously defiant. I have observed him motioning to spectators in the courtroom who are - who are not here right now. Someone, he raised his middle finger - what we commonly call flipping the bird. I think it was not to them but rather to this whole process. He is clearly defiant of authority.
>
> The court recognizes that freedom from shackling is an important component of a fair trial. The shackling of a defendant during a trial is permitted only in extraordinary circumstances. Restraints should be permitted only to prevent the escape of the defendant, to prevent the defendant from injuring others in the courtroom, or to maintain an orderly trial.
>
> In making such decisions the court must look at the totality of the circumstances. I'm relying on jail reports. I'm relying on my own

9

observations here in the courtroom. Clearly, he lacks respect for authority. He clearly lacks discipline to conform his behavior to accepted norms and clearly has a tendency toward violence.

Under the circumstances and in the exercise of the court's discretion, the court believes that he should be restrained during the course of the trial.

He is currently in ankle shackles, belly chains, and handcuffs. What we will do is this: we will place appropriate obstructions in front of the counsel table.

The counsel table, for the record, is sort of v-shaped. It is a continuous table from - beginning at the prosecutor's seat over to the defense seat. We'll put something - I'm not sure what it'll be. It may be briefcases. It may be something unobtrusive like a waste can. We have wide waste cans here - to try to block at least the foot manacles or shackles.

If the defendant chooses to expose his shackled state to the jury, so be it; that's his call.

We'll take appropriate precautions to assure that his status is - is as unobtrusive as possible for - for whenever we can.

I think he has a propoensity toward violence which could even be directed to his attorney. And under the circumstances I think he's an escape risk. He is clearly unable to conform himself to accepted standards of behavior and is likely to detract from the dignity of the process as demonstrated by what I've already observed this morning in the courtroom.

Accordingly, the People's motion is granted.

(Tr. 22-24).

The *Deck* Court concluded that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury[1] absent a trial court determination" that "essential state

---

[1] While not dispositive to the Court's analysis, the undersigned notes that Petitioner has not alleged that his restraints were ever visible (or known) to the jury or that his ability to defend himself in this matter was in any way impaired by his restraints.

interests such as physical security, escape prevention, or courtroom decorum" justify the use of such. *Deck*, 544 U.S. at 626-29. In denying Petitioner's appeal on this issue, the Michigan Court of Appeals stated:

> Based on the evidence presented, the trial court found defendant had a propensity toward violence, was an escape risk and was 'unable to conform himself to accepted standards of behavior and is likely to detract from the dignity of the process. . .' Because of these findings, the trial court granted the prosecution's motion. In addition, the trial court ordered that, to the extent possible, precautions should be taken to obscure the restraints from the jury's view. Given the evidence that defendant was dangerous to others and himself, a flight risk and engaged in inappropriate behavior, we cannot conclude that the trial court was without justification for its decision to grant the prosecution's motion to restrain defendant during the trial. Hence, the trial court did not abuse its discretion.

*People v. Johnson,* No. 255450, Opinion at 2 (Mich. Ct. App., Sep. 13, 2005) (internal citations omitted).

After considering the evidence, the trial judge made a particularized determination that it was necessary to restrain Petitioner to protect the safety of those in the courtroom (including Petitioner's attorney), to prevent Petitioner from escaping, and to preserve the dignity of the proceedings. The trial judge's determination is supported by substantial evidence. Accordingly, the Court concludes that the decision by the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## II. Denial of Petitioner's Request for Substitute Counsel

Immediately after the trial judge granted the prosecution's motion to restrain Petitioner during the trial, Petitioner (outside the presence of the jury pool) moved "for a different attorney." (Trial Transcript, March 31, 2004, 24). Petitioner made this request because he and his attorney "is not agreeing upon the things we should agree upon." (Tr. 24-25). When pressed to be more specific, Petitioner indicated that he did not believe that his attorney had spent sufficient time with him preparing his case. (Tr. 25). Petitioner also faulted his attorney for not filing a motion for a speedy trial. (Tr. 25).

Petitioner's attorney stated that he had "discussed the case on several occasions" with Petitioner. (Tr. 26). Counsel indicated that he did not believe that a motion for speedy trial was appropriate because he was awaiting the results of certain forensic examinations. (Tr. 26). Counsel also indicated that trial was delayed by the necessity to assess Petitioner's competency. (Tr. 28). The prosecuting attorney reported that she had discussed Petitioner's case with counsel on several occasions and that counsel was "always" prepared. (Tr. 27). The trial judge observed that Petitioner's attorney has practiced law for 20-25 years, "specializes in criminal defense," and has "incredible trial experience." (Tr. 30). The judge further observed that Petitioner waited until trial was set to begin to bring to the court's attention his dissatisfaction with his attorney. (Tr. 29). Specifically, the judge noted that Petitioner could have written a letter expressing his dissatisfaction long ago. (Tr. 28-29). In response to this observation, Petitioner asserted that he was not permitted to send mail during his pretrial detention. (Tr. 28-29). The trial judge found this statement less than credible, probably because Petitioner had just a moment earlier asserted that he had contacted his attorney by mail. (Tr. 25). Accordingly, the judge denied Petitioner's request for substitute counsel.

(Tr. 31). Petitioner argues that the trial judge's decision deprived him of his Sixth Amendment right to counsel.

The Sixth Amendment to the United States Constitution provides that, [i]n all criminal prosecutions, the accused shall enjoy the right to. . .the Assistance of Counsel for his defence." U.S. Const. amend. VI. While an "essential" element of this right is the right to be represented by "counsel of one's choice," the right to be represented by chosen counsel "is not absolute." *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007) (citing *United States v. Gonzales-Lopez*, 548 U.S. 140, 144 (2006)). When considering a defendant's request to obtain substitute counsel, courts must consider the following factors: (1) timeliness of the request; (2) adequacy of the court's inquiry into the defendant's complaint; and (3) whether the alleged conflict between defendant and counsel is so great that it results in "a total lack of communication preventing an adequate defense." *Mooneyham*, 473 F.3d at 291. The court must balance the defendant's right to counsel of his choice with the public's interest in the prompt and efficient administration of justice. *Id.*

An examination of these factors reveals that Petitioner's Sixth Amendment rights were not violated. Petitioner's request was not timely. The trial judge inquired as to the basis of Petitioner's request and found that it was without merit. There is no evidence the alleged conflict between Petitioner and his attorney was so great that it prevented counsel from adequately defending Petitioner. Finally, a review of the trial transcript reveals that counsel vigorously defended Petitioner in this matter.

The Michigan Court of Appeals rejected this particular claim, finding that the trial court did not abuse its discretion in denying Petitioner's request for substitute counsel. *People v.*

*Johnson,* No. 255450, Opinion at 2-4 (Mich. Ct. App., Sep. 13, 2005). In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Johnson's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    Respectfully submitted,

Date: November 3, 2009    /s/ Ellen S. Carmody
    ELLEN S. CARMODY
    United States Magistrate Judge