UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

GALVESTER HOWARD JOHNSON #224744,   | Case No. 1:06-CV-778
                                    |
    Petitioner,                   | HONORABLE PAUL L. MALONEY
                                    |
    v.                            | Magistrate Judge Ellen S. Carmody
                                    |
CINDI CURTIN,                       |
                                    |
    Respondent.                   |

_____

**OPINION and ORDER**

Overruling the Petitioner's Objections and Adopting the R&R;
Dismissing the 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus;
Declining to Issue a Certificate of Appealability;
Terminating and Closing the Case

    Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), this matter was automatically referred to the Honorable Ellen S. Carmody, United States Magistrate Judge, who issued a Report and Recommendation ("R&R") on November 3, 2009. Both the Federal Rules of Civil Procedure and the Magistrates Act were amended effective December 1, 2009 to simplify the calculation of time periods. *See Esch v. SSA*, No. 09-144, 2010 WL _____, *__ (W.D. Mich. Jan. 25, 2010) (Maloney, C.J.) (citing PUB. L. NO. 111-16 § 6(1), 123 Stat. 1608). A party now has fourteen days to file objections after being served with an R&R, instead of ten. *See* 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72 and W.D. MICH. LCIVR 72.3(b)). The fourteen days did not start until the day Johnson received the R&R from the prison mail, and the court counts all calendar days, *see* FED. R.

CIV. P. 6(a)(1)(A) and (B). Hence petitioner Johnson's objections – dated November 10, 2009 and filed on November 16, 2009 – are timely.[1] For the reasons that follow, the court will overrule Johnson's objections and adopt the R&R, dismissing the section 2254 habeas petition for lack of merit.

The Magistrate recounted the evidence and arguments which the prosecutor advanced in favor of keeping Johnson in restraints during his jury trial. That evidence included testimony by Kalamazoo Deputy Sheriff DeHaan that Johnson had attacked and threatened jail staff; covered his cell in feces; jammed a piece of paperclip into his handcuff lock, ostensibly intending to unlock them; and yelling and beating on the door of his cell; defying officers attempting to search his cell; and acting as if he would harm his attorney if he could. *See* R&R at 8 (citing Tr. 4 through 13). The Magistrate also reviewed the report of corrections officer Sampsell, which stating that Johnson had attempted to escape on more than one occasion, mutilated himself, threatened to kill prison staff, telling another inmate to cut himself with a razor, making weapons from razors and pieces of wire, and becoming "enraged and profane" when officers confronted him after he threw urine. *See* R&R at 9 (citing Tr. 6 and 19-22).

**Johnson's first objection** shows no legal error or faulty reasoning in the Magistrate's endorsement (under the circumstances of record) of allowing a state court to exercise its discretion to keep a prisoner restrained during his criminal trial. It merely attacks Deputy DeHaan's credibility, stating that when DeHaan was asked to produce evidence that Johnson assaulted staff,

---

[1] The warden has fourteen days from service of the objections to file a response, *See Horacek v. Caruso*, 2008 WL 4820483, *1 n.1 (W.D. Mich. Oct. 30, 2008) (Maloney, C.J.) (citing W.D. MICH. LCIVR 72.3(b)), but the court ascertains no need for a response from the warden to address Johnson's clearly meritless objections.

2

he could not do so because he was lying. *See* Objections of Galvester Howard Johnson filed November 16, 2009 ("Pet's Objections") at 1.

**Johnson's second objection** denies that he put a paper clip in his handcuffs, which again merely asks the court to substitute its assessment of credibility over that of the state trial judge who presided over his trial and observed the facial expressions, demeanor, "body language", and tone of voice of both Johnson and the prosecution's witnesses. Johnson's second objection expressly concedes that "yes, I've thrown feces" but alleges that he had, in his view, a "legitimate" reason for doing so: "my toilet water was cut off and they would not flush it for me for hours or the next day." *See* Pet's Objections at 1. Johnson conveniently fails to mention or respond to the Magistrate's reproduction of the state trial judge's oral analysis regarding his decision to restrain Johnson; that statement from the bench noted, for instance, that Johnson had "raised his middle finger – what we commonly call flipping the bird" – at spectators in the courtroom. *See* R&R at 9-10 (citing Tr 22 through 24).

Johnson also states that he "does not deny" all the other allegations of his violent, disruptive, intimidating, uncooperative, and unhygienic behavior while incarcerated prior to trial and while interacting with his attorney. *See id.* Johnson merely "reasons" that he was allegedly "beat[en]" and left without food, and was placed in isolation for over 6 months due to his behavior, "So they treated me like a dog[,] I acted like a dog." *Id.* This court agrees with the Magistrate (R&R at 11) that in light of the facts presented, the trial judge did not unreasonably determine, as a factual matter, that restraining Johnson during the trial was necessary to avert possible escape, violence against his attorney and others in the courtroom, and disruptive, vulgar behavior inconsistent with a safe and dignified judicial forum.

**Johnson's third objection also lacks merit.** Identifying no legal error and citing no precedent, he merely states his estimation of the size of the barrier which blocked the jury's view of his restraints, seemingly alleging (with handwritten graphic depiction) that the barrier was too small relative to the size of the jury box and allowed jurors to see his restraints whenever he had to move, leading them to convict them because they viewed him as a criminal rather than because of the evidence. *See* Pet's Objections at 1-2. There is no authority suggesting that such speculation, and subjective opinion about a physical fact in the absence of any photographic evidence or corroborating testimony, provides any basis for the court to disturb Johnson's conviction on collateral review.

**Johnson's fourth objection is merely a conclusory assertion** speculating about the jurors' reasoning, i.e., "my county jail time is why I was convi[c]ted, not the crim[e] itself." He provides no argument explaining the basis for this conclusion, and again cites no precedent. The court likewise finds no authority suggesting that such an assertion can justify a federal court in disturbing the guilty verdict of a State jury on collateral review.

**Johnson's fifth and final objection** challenges the Magistrate's suggestion that the state trial court's denial of his motion for new counsel does not warrant a federal habeas court's *vacatur* of his conviction. Specifically, the Michigan Court of Appeals neither committed nor flouted Supreme Court precedent[2] nor determined any facts unreasonably when it held that the trial judge's refusal to replace defense counsel was not an abuse of discretion. The Michigan Court of Appeals reasonably reached this conclusion based on the prosecuting attorney's endorsement of defense

---

[2] *See generally Earhart v. Konteh*, 589 F.3d 337, 342 (6th Cir. 2009) (Gibbons, J.) (in determining whether the state court misapplied federal law, "[w]e must base our decision solely on the holdings of the Supreme Court, not its *dicta* or on the decisions of the courts of appeals.")

counsel's preparation in other cases, the trial judge's stated familiarity with defense counsel's "incredible trial experience" over the course of 20-25 years, Johnson's failure to write to the court earlier about his alleged dissatisfaction with his appointed attorney, defense counsel's cogent and plausible explanation for his decision not to move for a speedy trial, and defense counsel's explanation that trial was delayed in part by the need to assess Johnson's competence to stand trial and assist in his own defense.

Johnson also faults his defense counsel for "failing" to prevent the use of restraints in the courtroom, but the state trial court was not obligated to find defense counsel deficient for "failing" to prevent a practice that was *eminently justified* by the trial judge's direct observation of the defendant and by the other evidence of record. *See US v. Mayes*, 158 F.3d 1215, 1225-26 (11th Cir. 1998) ("Properly factoring into the district court's decision [to shackle defendant during trial] were the appellants' prior prison disciplinary records, collective histories of violent crimes, and misconduct in prior judicial proceedings.") (citing, *inter alia*, *US v. Theriault*, 531 F.3d 281, 285 (6th Cir. 1976) (affirming shackling based on defendant's disciplinary record, escapes from custody, and obstreperous behavior during prior proceedings)).

Finally, in conjunction with his attack on some of defense counsel's specific decisions, Johnson shares his personal view that "trial is not his [defense counsel's] strong point." Pet's Objections at 3. But "[a]s the Court explained in *Strickland v. Washington*, . . . whether counsel is effective or ineffective does not turn on the defendant's subjective pleasure or displeasure with counsel's performance." *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996) (rejecting claim that defendant's trial counsel rendered constitutionally ineffective assistance, and affirming denial of habeas petition). Moreover, it is of no avail for Johnson to allege, without support, that he "did

5

some research on" defense counsel and "found out [that during] the 20+ years he has practiced[,] 79% of his clients ha[ve] gone to prison." Pet's Objections at 3. Johnson presents no documentary or other evidence to support this allegation, so there is no way for the court to verify it. Still less does Johnson attempt to show that such a rate is sufficiently below the success rate or performance of competent criminal-defense counsel as to constitute deficient performance outside the reasonable range of professional competence and discretion. And significantly, Johnson does not claim that the Michigan trial judge had access to, or awareness of, any such record of alleged sub-par performance as measured by incarceration, when he decided not to replace defense counsel as Johnson demanded.

**CERTIFICATE OF APPEALABILITY**

The U.S. Supreme Court disapproves of blanket denials of certificates of appealability ("COAs"). *Colwell v. McKee*, 2009 WL 125223, *3 (W.D. Mich. Jan. 16, 2009) (Maloney, C.J.) (citing *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001))). Rather, this court "must 'engage in a reasoned assessment of each claim' to determine whether a [COA] is warranted." *Oatis v. Caruso*, 2009 WL 80347, *4 (W.D. Mich. Jan. 8, 2009) (Maloney, C.J.) (citing *Murphy*, 263 F.3d at 467)..

Under 28 U.S.C. § 2253(c)(2), "'the court should grant a COA for an issue raised in a § 2254 petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right.'" *Wardlaw v. Howes*, 575 F. Supp.2d 820, 821 (W.D. Mich. 2008) (Paul L. Maloney, C.J.) (quoting *Harbison v. Bell*, 503 F.3d 566, 568 (6th Cir. 2007), *cert. denied*, – U.S. –, 128 S.Ct. 1479 (2008), *cert. granted o.g.*, – U.S. –, 128 S.Ct. 2959 (2008)). To satisfy this standard, "the petitioner must demonstrate that reasonable jurists could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues raised are 'adequate to deserve

6

further review.'" *Wardlaw*, 575 F. Supp.2d at 821(quoting *Harbison*, 503 F.3d at 569 (citing *Banks v. Dretke*, 540 U.S. 668, 705 (2004)). *See also Butz v. Berghuis*, 2009 WL 33462, *6 (W.D. Mich. Jan. 5, 2009) (Maloney, C.J.) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)) and *Henley v. Bell*, – F. App'x –, –, 2009 WL 233283, *1 (6th Cir. Feb. 2, 2009) (p.c.) (Siler, Cole, Cook) (citing *Banks*, 540 U.S. at 674), *cert. denied*, – U.S. –, 129 S.Ct. 1057 (2009).

The petitioner need not show, however, that he is likely to succeed on appeal. *See Wardlaw*, 575 F. Supp.2d at 821 (citing *Miller-El*, 537 U.S. at 337); *Workman v. Bell*, 484 F.3d 837, 842 n.3 (6th Cir. 2007) (distinguishing standard for stay pending appeal, which focuses on appellant's likelihood of success on the merits, from the COA standard, which requires a lesser showing), *reh'g & reh'g en banc denied* (6th Cir. May 7, 2007). "'[I]t is consistent with § 2253 that a certificate of appealability will issue in some instances where there is no certainty of ultimate relief.'" *Wardlaw*, 575 F. Supp.2d at 821 (quoting *Walker v. Carlton*, 114 F. App'x 687, 690 (6th Cir. 2004) (quoting *Miller-El*, 537 U.S. at 337)).

Petitioner Johnson does not meet the standard for a COA, because other reasonable jurists would not disagree with the determination that the R&R is correct, i.e., the state courts did not violate or misapply then-existing United States Supreme Court precedent, nor did they determine any facts unreasonably in light of the record. Nor has he presented any other issues which are "adequate to deserve further review."

**ORDER**

Petitioner Johnson's objections **[Document #20] are OVERRULED**.

The Magistrate Judge's R&R **[Document #19] is ADOPTED**.

The 28 U.S.C. § 2254 habeas petition **[Document # 01] is DISMISSED**.

This case is **TERMINATED** and **CLOSED**.

This is a final order**, but the court declines to issue a certificate of appealability**.

The separate judgment required by FED. R. CIV. P. 58 will issue contemporaneously.

**IT IS SO ORDERED this 25th day of January 2010.**

                                              /s/ Paul L. Maloney
                                              Honorable Paul L. Maloney
                                              Chief United States District Judge